**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

------------------------------------------------------ x
                  :

MARK LEE,                 : Civil Action No. 2:20-cv-1427
**on behalf of himself and**    :
**similarly situated employees,**   :
                  : **INDIVIDUAL AND**
       *Plaintiff,*       : **COLLECTIVE/CLASS**
                  : **ACTION COMPLAINT**
       v.         :
                  :
**BRIDGESTONE AMERICAS, INC.,** : **Jury Trial Demanded**
**and  BRIDGESTONE RETAIL**    :
**OPERATIONS, LLC,**        :
                  : **Electronically Filed**
       *Defendants.*   :
------------------------------------------------------ X

**INDIVIDUAL AND COLLECTIVE/CLASS ACTION COMPLAINT**
**Nature of the Action, Jurisdiction, and Venue**

1.    This is an individual and collective/class action under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 207(a) & 216(b), the Pennsylvania Minimum Wage Act (PMWA), 43 P.S. §§ 333.104(c) & 333.113, the common law of contracts, and the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260.3.

2.    Jurisdiction of this court is invoked under 28 U.S.C. § 1331 and, for the state law claims, 28 U.S.C. § 1367(a) and 28 U.S.C. § 1332(d).

3.    The actions and policies alleged to be unlawful were committed in whole or in part around Pittsburgh, PA, where Plaintiff worked for Defendants. This action is within the jurisdiction of, and venue is proper in, the United States District Court for the Western District of Pennsylvania.

**Parties**

4.    **Plaintiff Mark Lee** resides in Oakdale, PA 15071. Plaintiff has worked for Defendants Bridgestone Americas, Inc., specifically the subsidiary Bridgestone Retail Operations, LLC, from in or about September 2018 through the present at various stores owned and operated by Defendants (Pittsburgh (Banksville), PA; Moon Township, PA; Robinson

Township, PA; West Mifflin (Century III), PA; Steubenville, OH) throughout his employment.

5.  Plaintiff has regularly performed work within the states of Pennsylvania and Ohio.

6.  **Defendant Bridgestone Americas, Inc. (hereafter "Defendant Bridgestone Americas" or "Bridgestone Americas")**, is a global leader in tire technology with a family of enterprises including more than 50 production facilities and 55,000 employees throughout the Americas.  Defendant Bridgestone Americas, Inc., maintains its corporate headquarters at 200 4th Avenue S., Nashville, TN 37201.

7.  **Defendant Bridgestone Retail Operations, LLC (hereafter "Defendant Bridgestone Retail" or "Bridgestone Retail")**, is a subsidiary of Bridgestone Americas, Inc., operating more than 2,000 stores throughout the United States specializing in consumer replacement tires and complete automotive maintenance and repairs.   Defendant Bridgestone Retail maintains its headquarters at 200 4th Avenue S., Nashville, TN 37201.

8.  At all relevant times Defendants have been an enterprise engaged in interstate commerce with annual revenues in excess of $500,000 and have been subject to the provisions of Section 203(s)(1) of the FLSA.

9.  Defendants employ in excess of 10,000 full-time employees.

10.  Defendants have annual revenues in excess of $1 billion.

11.  Defendants regularly employ individuals in the state of Pennsylvania and other states, including Plaintiff, in the performance of work on behalf of Defendants and are subject to the provisions of the PMWA and comparable wage laws in states other than Pennsylvania.

<u>**Statement of Claims**</u>

12.  Plaintiff has worked for Defendants as a Manager of Tire Sales since September 2018.

13.  While working for Defendants, Plaintiff has worked in various stores owned and operated by Defendants, including stores located in Pittsburgh (Banksville), PA; Moon Township, PA; Robinson Township, PA; West Mifflin (Century III), PA; and Steubenville, OH.

14.  Since he began working for Defendants, Plaintiff has been a W-2 employee.

15.  Plaintiff's primary duty as a Manager of Tire Sales has been to oversee the sale of tires to

Defendants' customers and to perform whatever manual tasks (such as removing and installing new tires) are necessary to repair and replace tires.

16.  Plaintiff has been paid as an hourly employee (most recently at an hourly rate of around $21 per hour).

17.  Plaintiff has also been paid certain bonuses based on the sale of tires and services.

18.  Plaintiff typically has been scheduled to work five shifts each week, with each shift usually being scheduled for 8.5 hours.

19.  Plaintiff has been a non-exempt employee within the meaning of the FLSA and the PMWA.

20.  Plaintiff has regularly worked more than 40 hours in workweeks.

21.  Plaintiff has been entitled to payment of his promised straight time wages for the hours worked in all workweeks, including both non-overtime workweeks and overtime workweeks.

22.  Plaintiff has been entitled to payment of overtime at one-and-one-half times his regular rate of pay for the hours worked in excess of forty hours in workweeks.

23.  For tracking the time Plaintiff has worked for Defendants, Plaintiff has clocked in and out each day by punching into a computerized, nationwide time-keeping system when he starts to work at the beginning of the day, when (if at all) he takes a lunch break, and when he stops working at the end of the day.

24.  Since he began working for Defendants, Plaintiff has been subjected to certain common, nationwide corporate policies and practices regarding time-keeping that are the subject of this lawsuit—those common, nationwide policies and practices are described below in paragraphs 41 through 56.

25.  As a Manager of Tire Sales, Plaintiff has reported to a Store Manager, who reports to a District Manager, who reports to a Regional Manager, who reports to a Regional Manager VP, who reports to executives at Defendants' headquarters.

26.  In the last three years (i.e., since September 21, 2017), there have been thousands of other Managers of Tire Sales performing the same primary duties as Plaintiff working at Defendants' stores across the country. ("Other Managers of Tire Sales")

27. The Other Managers of Tire Sales, like Plaintiff, have been treated as hourly employees (with hourly rates around $20 an hour).

28. The Other Managers of Tire Sales, like Plaintiff, have been treated as W-2 employees.

29. The Other Managers of Tire Sales, like Plaintiff, have been paid bonuses based on the sale of tires and services.

30. The Other Managers of Tire Sales, like Plaintiff, have tracked time worked for Defendants by clocking in each day in and out each day by punching into a computerized, nationwide time-keeping system when they start to work at the beginning of the day, when (if at all) they take a lunch break, and when they stop working at the end of the day.

31. The timekeeping system used by the Other Managers of Tire Sales is the same timekeeping system as the one that Plaintiff punched in and out of since he began working for Defendants.

32. The Other Managers of Tire Sales, like Plaintiff, have regularly worked overtime.

33. The Other Managers of Tire Sales, like Plaintiff, have been subject to certain common, nationwide corporate policies and practices regarding time-keeping that are the subject of this lawsuit—those common, nationwide policies and practices are described below in paragraphs 41 through 56.

34. The Other Managers of Tire Sales, like Plaintiff, have reported to their respective Store Managers, who in turn report to their respective Regional Managers, who in turn report to a Regional Manager VP who reports to executives at Defendants' headquarters.

35. In other words, the Other Managers of Tire Sales have the same chain of command as Plaintiff:  Manager of Tire Sales, to Store Manager, to Regional Manager, to Regional Manager VP, to Defendants' executive headquarters.

36. In addition to Plaintiff and the Other Managers of Tire Sales, there have also been thousands of other hourly workers ("Other Hourly Workers") employed in Defendants' stores, including Service Managers, Sales Representatives, and Maintenance Technicians.

37. Like Plaintiff and the Other Managers of Tire Sales, the Other Hourly Workers are W-2 employees of Defendants who have used the same timekeeping systems and reported up through the same chains of command starting with their respective Store Managers.

38.     Like Plaintiff and the Other Managers of Tire Sales, the Other Hourly Workers have punched into and out of the common, nationwide timekeeping system (as described above in ¶¶ 30 & 31), have regularly worked overtime, and have been subject to certain common, nationwide corporate policies and practices regarding time-keeping that are the subject of this lawsuit—those common, nationwide policies and practices are described below in paragraphs 41 through 56.

39.     Plaintiff, the Other Managers of Tire Sales, and the Other Hourly Workers are similarly situated employees for purposes of this lawsuit.  Hereinafter, this Complaint refers to Plaintiff, the Other Managers of Tire Sales, and the Other Hourly Workers collectively as the "Putative Class Members".

40.     Defendants, sophisticated employers with knowledge of their obligations under the FLSA and state wage-and-hour laws including the PMWA, have understood they are required to maintain accurate records of time worked by the Putative Class Members.

<u>Modification of time records:</u>

41.     Notwithstanding this knowledge, Defendants have knowingly and intentionally modified the time records of Plaintiff and the other Putative Class Members since at least September 2017.

42.     This falsification of time records has resulted in the systematic understatement of hours worked by Plaintiff and the other Putative Class Members, which, because they are hourly employees, directly results in their underpayment of wages owed.

43.     One manner in which this falsification occurs is the following:  in Defendants' nationwide computerized timekeeping system, Defendants change (override) the Putative Class Members' raw timekeeping entries by adding a lunchbreak where Plaintiff and the other Putative Class Members did not take or record such a lunchbreak.  The insertion of these lunchbreaks has resulted in the systematic understatement of hours worked (and therefore wages owed) to Plaintiff and the other Putative Class Members.

44.     Defendants also routinely and as a matter of common, nationwide corporate policy and practice alter (override) the Putative Class Members' time records in order to reduce the compensable work time for times other than the lunch breaks.  In particular, these

overrides are made to conform to a nationwide policy and practice of preventing and/or minimizing overtime hours—thus the overrides are targeted toward workweeks in which, without the overrides, a Putative Class Member would otherwise be entitled to substantial overtime.

45. Defendants regularly alter (override) the time records for times other than lunchbreaks for the same reason they alter (override) the time records for lunchbreaks:  reduce the compensable work time and reduce or avoid the payment of overtime.

46. The software systems that Defendants use to track the hours worked and wages owed to Plaintiff and the other Putative Class Members tracks the workers' raw time entries and also tracks the alterations (overrides) made by Defendants to understate and suppress the hours and wages for the Putative Class Members.

47. This nationwide policy and practice of altering (overriding) time records results in violations of the FLSA, the PMWA, the wage laws of states other than PA and the common law.

Systematic undercounting of time worked:

48. In addition to altering (overriding) the time records of Plaintiff and the other Putative Class Members, Defendants have also as a matter of common, nationwide corporate policy and practice systematically undercounted time worked by Plaintiff and the similarly situated hourly workers.

49. Specifically, the time-keeping system implemented and maintained by Defendants at the corporate level and applied in its 2,000+ stores, including the stores where Plaintiff worked, has included a feature that delays by multiple minutes the punch-in time (i.e., the "start" time) for each shift worked by Plaintiff and the other Putative Class Members.

50. This feature of Defendants' time-keeping system appears to be designed to "shave" time from the hourly employees—notably, the time-keeping system accurately tracks the punch-out time for a given shift (i.e., the "end" time), but it systematically delays the punch-in time, thus misstating the hours worked by Plaintiff and the other Putative Class Members in a manner that is always and systematically in favor of the Defendants.

51. The result of this automatic time-shaving is that the work time credited to Plaintiff and

the other Putative Class Members is systematically less than the actual work time.

52.   The result of Defendants' systematic reduction in the amount of work time credited to Plaintiff and the other Putative Class Members is that Plaintiff and the other Putative Class Members are denied regular wages and overtime wages otherwise due.

53.   Plaintiff has complained multiple times about the falsification of time records in the manners described in this Complaint, including the systematic undercounting of time worked and the failure to pay regular wages and overtime wages.

54.   Notwithstanding these complaints Defendants have failed to correct the common, nationwide corporate policies and practices giving rise to Plaintiff's complaints.

55.   Defendants' common, nationwide corporate policies and practices of failing to maintain accurate records of time worked, falsifying time records, and systematically undercounting time worked by Plaintiff and the similarly situated hourly workers, with the resulting failure to pay straight time and overtime wages due, are violations of the FLSA, the PMWA the wage laws of states other than PA and the common law.

56.   Defendants have knowingly and intentionally violated the FLSA's explicit requirement at 29 U.S.C. §211(c) that they maintain accurate records of time worked, and at 29 U.S.C. §207(a) that they pay for overtime worked.

Miscalculating overtime pay to take into account bonuses:

57.   In addition to systematically modifying time records (*supra* ¶¶ 41-47) and shaving time (*supra* ¶¶ 48-56), Defendants have also knowingly and intentionally violated the FLSA in another way:  Defendants have failed to properly include bonus pay into the calculation of Plaintiff's and certain other Putative Class Members' regular rate of pay for purposes of calculating overtime.

58.   Hereinafter, this Complaint refers to the Putative Class Members who received bonuses as part of their compensation as "Bonus Recipients," a subclass that includes among others Plaintiff, Other Managers of Tire Sales, Service Managers and Sales Representatives.

59.   Plaintiff and the Bonus Recipients have been paid weekly bonuses based on performance such as tire sales, warranty services, and credit card applications.

60.     These bonuses have regularly been earned in overtime weeks.

61.     Under the FLSA and other applicable wage-and-hour laws, these bonuses must be included in an employee's total compensation for purposes of calculating their overtime pay.

62.     Notwithstanding the legal obligation to include any bonuses earned in overtime weeks in the calculation of overtime due to Plaintiff and the other Bonus Recipients, Defendants have failed to do so as a matter of common, nationwide corporate policy and practice.

63.     Defendants, sophisticated employers with knowledge of their obligations under the FLSA and the PMWA, have understood they are required to include all compensation, including bonuses, when determining the rate for overtime payments.

   Failure to pay promised wages:

64.     Defendants have also violated the common law of contract by failing to pay the promised wages due to Plaintiff and the other Putative Class Members.

65.     Defendants made clear and definite promises to Plaintiff and the other Putative Class Members that they would be paid a certain hourly amount for each hour, or increment of an hour, worked.

66.     Plaintiff and the other Putative Class Members have acted on this promise expecting to be paid for time worked at the promised hourly amount.

67.     The promise by Defendants, and the actions of Plaintiff and the other Putative Class Members in accepting this promise by performing the work, created an enforceable contractual duty by Defendants to pay the promised hourly amount.

68.     Defendants have no good-faith basis on which to withhold the promised wages.

69.     As a result of Defendants' breaches, Plaintiff and the other Putative Class Members have been denied the benefit of the bargain, and have suffered damages in the form of unpaid wages.

70.     Defendants' violations of the FLSA, the PMWA, the WPCL and the common law have been knowing, willful and in reckless disregard of the law.

### Collective/Class Action Averments

71.   As noted above, there have been thousands of similarly situated hourly workers (i.e., Putative Class Members as defined above) who have been employed by Defendants since September 2017 (three years prior to the filing of this Complaint).

72.   The Putative Class Members, like Plaintiff, have been subject to common, nationwide corporate rules and policies regarding time-keeping that result in their being denied regular pay and overtime pay in violation of the FLSA, the PMWA, the wage laws of states other than PA and the common law, as described in paragraphs 41 through 56 above.

73.   The Putative Class Members have all been W-2 employees of Defendants.

74.   The Putative Class Members have regularly worked overtime hours.

75.   The Putative Class Members have been denied payment of their straight wages and overtime wages due to Defendants' knowing violation of its obligation to maintain accurate records of time worked, and to pay its hourly employees for all time worked, pursuant to the nationwide timekeeping policies and practices described above in paragraphs 41 through 56.

76.   Defendants have knowingly and intentionally failed to pay the Putative Class Members for their overtime hours either at the straight rate or proper overtime rate.

77.   Defendants have also failed to properly calculate overtime due to Plaintiff and the other Bonus Recipients, as described above in paragraphs 57 through 63.

78.   Defendants' failure to pay overtime due to the Putative Class Members over the past three years, their failure to pay straight time due to the Putative Class Members either in non-overtime workweeks or in overtime workweeks, and their failure to maintain accurate records of time worked by these hourly employees has been in violation of the FLSA, PMWA, and other applicable state wage-and-hour laws.

79.   As with Plaintiff, Defendants have also, as a matter of common policy, breached their contractual duty to pay the Putative Class Members their promised straight wages for all hours worked.

80.   Defendants have knowingly and intentionally violated the FLSA, the PMWA, the WPCL

and the common law in failing to pay straight wages and overtime wages and failing to maintain accurate time records of the employees they paid hourly.

81. Furthermore, Defendants have also knowingly and intentionally violated the FLSA, the PMWA, and other applicable wage-and-hour laws by failing, as a matter of common policy, to take into account bonuses paid to the Bonus Recipients when calculating the overtime pay for these workers.

82. Plaintiff and the other Bonus Recipients as defined above in paragraph 58 routinely received bonus payments.

83. Defendants did not include these bonuses when calculating the proper overtime rate used to determine overtime pay when Plaintiff and the other Bonus Recipients worked overtime.

## **COUNT I:  VIOLATION OF THE FLSA: OVERTIME (NATIONWIDE)**
## **Individual and Collective Action for all Putative Class Members**

84. Plaintiff incorporates by reference the preceding paragraphs of this complaint.

85. Plaintiff and the other Putative Class Members are employees of Defendants within the meaning of the FLSA.

86. Defendants are employers within the meaning of the FLSA.

87. Plaintiff and the other Putative Class Members have been non-exempt within the meaning of the FLSA.

88. Plaintiff and the other Putative Class Members have regularly worked more than forty hours per week (overtime work).

89. Plaintiff and the other Putative Class Members have been subjected to common, nationwide corporate policies and practices that result in the falsification of time records and, in turn, the underpayment of regular wages and overtime wages otherwise due, as described in paragraphs 41 through 56 above.

90. Defendants' failure to pay the straight wages and overtime wages due in overtime weeks to Plaintiff and the other Putative Class Members has violated and continues to violate the FLSA.

91. For at least the past three years, Defendants' violations of the FLSA are knowing, willful,

and in reckless disregard of the FLSA's record-keeping and overtime requirements.

92.   Plaintiff and the other Putative Class Members are entitled to recover from Defendants the overtime pay improperly withheld by Defendants, plus interest, attorneys' fees, and costs.

93.   Plaintiff and the other Putative Class Members are also entitled to recover liquidated damages under 29 U.S.C. §§ 207(a) & 216(b).

## COUNT II:  VIOLATION OF THE PMWA: (43 P.S. §§ 333.104(a), 333.104(c) & 333.113) Individual and Class Action for all Putative Class Members at PA Stores

94.   Plaintiff incorporates by reference the preceding paragraphs of this complaint.

95.   Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania have been employees of Defendants within the meaning of the PMWA.

96.   More than 500 of the Putative Class Members have worked at Defendants' stores in Pennsylvania.

97.   Defendants are employers of these individuals within the meaning of the PMWA.

98.   Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania have been non-exempt within the meaning of the PMWA.

99.   Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania have regularly worked more than forty hours per week (overtime work).

100.  Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania have been subjected to common, nationwide corporate policies and practices that result in the falsification of time records and, in turn, the underpayment of regular wages and overtime wages otherwise due under the PMWA.

101.  Defendants' failure to pay the straight wages and overtime wages due in overtime weeks to Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania has violated and continues to violate the PMWA.

102.  For at least the past three years, Defendants' violations of the PMWA are knowing, willful, and in reckless disregard of the PMWA's overtime requirements.

103.  Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania are entitled to recover from Defendants the overtime pay improperly

withheld by Defendants, plus interest, attorneys' fees, and costs.

## COUNT III:  BREACH OF CONTRACT (NATIONWIDE)
## Individual and Class Action for all Putative Class Members

104.    Plaintiff incorporates by reference the preceding paragraphs of this complaint.

105.    Plaintiff and the other Putative Class Members were promised by Defendants to be paid an hourly rate of pay for work performed.

106.    Plaintiff and the other Putative Class Members have acted in reliance on the promise made by Defendants.

107.    The promise by Defendants, and the actions by Plaintiff and the other Putative Class Members taken in reliance on this promise, created an enforceable contractual duty of Defendants to pay Plaintiff and Plaintiff and the other Putative Class Members the promised hourly rate for work performed.

108.    Despite these promises Defendants failed as a matter of common corporate policy to pay Plaintiff and the other Putative Class Members at the promised hourly rate for time worked.

109.    Defendants' failure to pay the promised hourly rate to Plaintiff and the other Putative Class Members constitutes a breach of their contractual duty to Plaintiff and similarly situated workers.

110.    Defendants have no good faith basis for breaching their duty to Plaintiff and the other Putative Class Members.

111.    Plaintiff and the other Putative Class Members are entitled to the benefit of the bargain (unpaid wages), plus interest and compensatory damages consistent with the common law.

## COUNT IV: VIOLATION OF THE WPCL
## Individual and Class Action: All Hourly Workers at PA Stores

112.    Plaintiff incorporates by reference the preceding paragraphs of this complaint.

113.    Defendants' contractual obligation to pay Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania created obligations under the WPCL, 43 P.S. § 260.1 *et seq.*

114.    The compensation Defendants failed to pay to Plaintiff and the other Putative Class

Members who worked at Defendants' stores in Pennsylvania constitute wages within the meaning of the WPCL.

115. Defendants violated the WPCL by failing to pay wages owed to the Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania.

116. Defendants did not and do not have any good-faith basis for withholding the wages.

117. Plaintiff and the other Putative Class Members who worked at Defendants' stores in Pennsylvania are entitled to their unpaid wages as well as statutory penalties (25% of unpaid wages), pre-judgment and post-judgment interest, attorney's fees, and costs.

## COUNT V:  VIOLATION OF THE FLSA (NATIONWIDE)
### Individual and Class Action for all Bonus Recipients

118. Plaintiff incorporates by reference the preceding paragraphs of this complaint.

119. As noted above, this Complaint refers to Putative Class Members who received bonuses as part of their compensation as "Bonus Recipients," a subclass that includes among others Plaintiff, Other Managers of Tire Sales, Service Managers and Sales Representatives.

120. Plaintiff and the other Bonus Recipients have regularly worked in excess of 40 hours in workweeks.

121. Defendants have failed, as a matter of common, nationwide corporate policy and practice, to include bonuses in the calculation of the overtime due in overtime weeks for Plaintiff and the other Bonus Recipients.

122. Defendants' failure to include the calculation of bonuses in the overtime due to Plaintiff and the other Bonus Recipients is a violation of the FLSA.

123. Defendants' failure to include the calculation of bonuses in the overtime due to Plaintiff and the other Bonus Recipients is knowing and willful.

124. For these violations, Plaintiff and the other Bonus Recipients are entitled to overtime wages, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees and costs under the FLSA.

## COUNT VI:  VIOLATION OF THE PMWA
### Individual and Class Action for Bonus Recipients at PA Stores

125. Plaintiff and the other Bonus Recipients who worked at Defendants' stores in

Pennsylvania have been paid bonuses in addition to their hourly rates.

126.    Plaintiff and the other Bonus Recipients who worked at Defendants' stores in Pennsylvania have regularly worked in excess of 40 hours in workweeks.

127.    Defendants have failed, as a matter of common, nationwide corporate policy and practice, to include bonuses in the calculation of the overtime due in overtime weeks for Plaintiff and the other Bonus Recipients who worked at Defendants' stores in Pennsylvania.

128.    Defendants' failure to include the calculation of bonuses in the overtime due to Plaintiff and the other Bonus Recipients who worked at Defendants' stores in Pennsylvania is a violation of the PMWA.

129.    Defendants' failure to include the calculation of bonuses in the overtime due to Plaintiff and the other Bonus Recipients who worked at Defendants' stores in Pennsylvania is knowing and willful.

130.    Plaintiff and the other Bonus Recipients who worked at Defendants' stores in Pennsylvania are entitled to overtime wages, interest, attorneys' fees and costs for Defendants' violation of the PMWA.

## **PRAYER FOR RELIEF**

131.    WHEREFORE, Plaintiff on behalf of himself and the Putative Class Members respectfully request that this Court:

A.    Order Defendants to pay the unpaid overtime compensation owed to Plaintiff and the Putative Class Members;

B.    Order Defendants to pay applicable liquidated damages and statutory penalties to Plaintiff and the Putative Class Members;

C.    Order Defendants to pay Plaintiff and the Putative Class Members for unpaid non-overtime (straight) wages;

D.    Order Defendants to pay pre- and post-judgment interest as well as the litigation costs and reasonable attorneys' fees for Plaintiff and the Putative Class Members; and,

E.    Grant such further relief as the Court deems necessary and proper.

Respectfully submitted,

  s/Joseph H. Chivers                    
Joseph H. Chivers, Esq.
PA ID No. 39184
The Employment Rights Group, LLC
First & Market Building
Suite 650
100 First Avenue
Pittsburgh, PA  15222
jchivers@employmentrightsgroup.com
Tel: (412) 227-0763
Fax: (412) 774-1994

*Counsel for Plaintiff*
Dated:  September 21, 2020              *and similarly situated employees*